Lauren Braddy, lauren@a2xlaw.com
(application for Admission *Pro Hac Vice* anticipated)
Carter Hastings, carter@a2xlaw.com
(Application for Admission *Pro Hac Vice* anticipated)
**ANDERSON ALEXANDER, PLLC**
Attorneys For Plaintiff and Putative Collective/Class Members
101 N. Shoreline, Blvd, Suite 610
Corpus Christi, Texas 78401
Telephone (361) 452-1279
Facsimile: (361) 452-1284

Andrew W. Stavros (8615)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
andy@stavroslaw.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BENJAMIN ROY,**<br>**Individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**TPUSA, INC., and SENTURE, LLC**<br><br>**Defendants.** | **ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Case No.** _____<br><br>**Judge:**_____ |

Plaintiff—Benjamin Roy—brings this action individually and on behalf of all current and former hourly call-center employees (collectively, "Plaintiff and the Putative Collective/Class Members"), who worked for Defendants—TPUSA, Inc. ("TPUSA") and Senture, LLC ("Senture")—anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and

attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and unpaid compensation, liquidated damages, and attorneys' fees and costs pursuant to the Kentucky Wage and Hour Act, KY. REV. STAT. ANN. §§ 337.010–337.994 ("Kentucky Acts").

## I.
## OVERVIEW

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA and a class action pursuant to the state laws of Kentucky under FED. R. CIV. P. 23, to recover unpaid wages and other applicable penalties.

2.      Plaintiff and the Putative Collective/Class Members are those similarly situated persons who worked for Defendants in call centers or remotely at any time during the relevant time periods through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of wages, including overtime, in violation of state and federal law.

3.      Although Plaintiff and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective/Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.      Likewise, Plaintiff and the Putative Collective/Class Members worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked.

5.      During the relevant time period(s), Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6.    Specifically, Defendants' regular practice—including during weeks when Plaintiff and the Putative Collective/Class Members worked in excess of forty (40) hours (not counting hours worked "off-the-clock")—was (and is) to require the Plaintiff and the Putative Collective/Class Members to perform necessary and indispensable work—preparing their essential computer systems and programs—off-the-clock prior to starting their shift and at the end of their unpaid meal break (collectively, the "Start-Up Work").

7.    In addition to the unpaid Start-Up Work, Defendants also refused to compensate the Plaintiff and the Putative Collective/Class Members for time spent performing troubleshooting on their computers, such as when the computer or its software would go down and require a restart, password reset, or other types of work attempting to correct the computer or its software, so they could resume work (collectively, the "Technical Downtime Work").

8.    The effect of Defendants' practices were (and are) that all compensable time worked by Plaintiff and the Putative Collective/Class Members was not (and is not) counted and paid; thus, Defendants have failed to properly compensate Plaintiff and the Putative Collective/Class Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA and applicable state law.

9.    Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period(s).

10.    Plaintiff and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or applicable state law.

11.    Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective

action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight time and other damages owed under the state laws of Kentucky as a class action pursuant to FED. R. CIV. P. 23.

12.    Plaintiff also pray that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

13.    Plaintiff also prays that the Rule 23 class is certified as defined herein, with the Plaintiff designated herein named as the Class Representative.

## II.
## THE PARTIES

14.    Plaintiff—Benjamin Roy ("Roy")—was employed by Defendants in Kentucky during the relevant time period(s). Plaintiff Roy did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

15.    The FLSA Collective Members are those current and former hourly call-center employees[2] who were employed by Defendants at any time from December 6, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff worked and were paid.

16.    The Kentucky Class Members are those current and former current and former hourly call-center employees who were employed by Defendants in the State of Kentucky at any time from December 6, 2019, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Roy worked and was paid.

---

[1] The written consent of Benjamin Roy is attached hereto as Exhibit "A."

[2] Plaintiff's definition of "call center employees" include employees who handle inbound and outbound phone calls on behalf of Defendants and who work either in call centers or remotely from their home.

17.     Defendant TPUSA, Inc. is a foreign for-profit corporation, that is headquartered in, and licensed to do business in, the State of Utah and may be served through its registered agent for service of process: **CT Corporation System, 1108 E. South Union Ave, Midvale, Utah 84047.**

18.     Defendant Senture, LLC is a foreign limited liability corporation, that is headquartered in, and licensed to do business in, the State of Utah and may be served through its registered agent for service of process: **CT Corporation System, 1108 E. South Union Ave, Midvale, Utah 84047.**

19.     Defendants are joint employers pursuant to the FLSA. They have common ownership, oversight and control over Plaintiff and the Putative Collective/Class Members. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

### III.
### JURISDICTION & VENUE

20.     This Court has federal question jurisdiction over Plaintiff's claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

21.     This Court has supplemental jurisdiction over Plaintiff's additional state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's claims under the FLSA that they form part of the same case or controversy.

22.     Plaintiff has not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

23.     This Court has general personal jurisdiction over Defendants because Utah qualifies as their home state.

24.     Venue is proper pursuant to 28 U.S.C. § 1391 in the District of Utah because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

25.     Additionally, Defendants' corporate headquarters are in Salt Lake City, Utah, which is located within this District and Division.

## IV.
## BACKGROUND FACTS

26.     As one of the World's largest outsourced customer contact service, TPUSA and its subsidiaries and affiliates, including Senture, provide their clients with inbound and outbound call center support.[3]

27.     To provide their services, Defendants employed (and continue to employ) numerous Call Center Employees—including Plaintiff and the individuals that make up the putative or potential class.

28.     While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work throughout Defendants' facilities in the United States.

**Defendants Are Joint Employers Under the FLSA**

29.     Defendants are joint employers pursuant to the FLSA.

30.     Defendants are integrated companies that share customers, properties, employees, and all other assets.

31.     Defendant TPUSA is the ultimate legal parent of Senture.

32.     Defendant TPUSA has the power to hire and fire any and all of Senture's employees.

33.     Defendant TPUSA supervises and controls all of the Senture's employees' work schedules and conditions of employment.

34.     Defendant TPUSA determines the rate and method of payment for all employees working under Senture.

---

[3] https://www.teleperformance.com/en-us/why-tp/about-tp/ (last visited on November 20, 2024).

35.     On information and belief, TPUSA made the decision for its subsidiaries and affiliates—the other Defendants—to not pay for the Start-Up Work or Technical Downtime Work.

36.     Defendant TPUSA maintains employment records for the direct employees of all Senture.

37.     Specifically, TPUSA controls the HR Department which maintains all the employment records for all of Senture's employees.

38.     Defendant TPUSA manages key internal relationships to Senture—that is, Defendant TPUSA directs the financials of Senture and controls the pay, hours and schedules of Plaintiff and the Putative Collective/Class Members.

39.     Moreover, all Defendants have (or had) the power to hire and fire Plaintiff and the Putative Collective/Class Members; supervise and control Plaintiff and the Putative Collective/Class Members' work schedules and conditions of their employment; determine their rate and method of payment, and jointly maintain their employment records.

40.     As a result, all Defendants are responsible, both individually and jointly, for compliance with all the applicable provisions of the FLSA and Kentucky state law with respect to the entire employment for the workweeks at issue in this case.

**Plaintiff and the Putative Collective/Class Members are Similarly Situated**

41.     Plaintiff and the Putative Collective/Class Members were employed by Defendants to handle calls for Defendants' products, customer assistance, sales, and bill collection.

42.     Plaintiff Roy has been employed by Defendants as an hourly Customer Service Representative in Kentucky since approximately October 15, 2020.

43.     Plaintiff and the Putative Collective/Class Members are hourly call-center employees that were (and continue to be) paid by the hour.

44.    Plaintiff and the Putative Collective/Class Members typically worked (and continue to work) five days per week and approximately forty (40) on-the-clock hours per week.

45.    On some occasions, Plaintiff and the Putative Collective/Class Members would work less than forty (40) hours in a week.

46.    In addition to their scheduled "on-the-clock" hours, Plaintiff and the Putative Collective/Class Members worked (and continue to work) between ten (10) to thirty (30) minutes off-the-clock per day for which they were not compensated.

47.    In weeks in which Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours in a week, the off-the-clock work qualified as unpaid overtime.

48.    In weeks in which Plaintiff and the Putative Collective/Class Members worked less than forty (40) hours in a week, the off-the-clock work would qualify as unpaid straight time.

49.    Defendants employed (and continues to employ) other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiff.

50.    Moreover, Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of Defendants resulting in the complained of FLSA and state law violations alleged herein.

**Unpaid Start-Up Work**

51.    Plaintiff and the Putative Collective/Class Members were not (and continue to not be) compensated for all the hours they worked for Defendants as a result of Defendants' corporate policy and practice of requiring all call-center employees to be ready to take their first phone call within minutes of clocking in.

52.    Specifically, Plaintiff and the Putative Collective/Class Members were (and continue to be) required to perform integral and indispensable tasks before clocking in. The Start-Up Work was necessary to prepare for their shifts and allow them to begin taking calls after clocking in. The Start-

Up Work includes turning on computers and waiting for them to boot-up, opening and logging into the Virtual Protected Network; opening and logging into other client specific programs and databases, and reading emails.

53.    The Start-Up Work can take anywhere from ten (10) minutes up to thirty (30) minutes before each time the Plaintiff and Putative Collective/Class Members clock in.

54.    In weeks in which Plaintiff and the Putative Collective/Class Members worked fewer than forty (40) hours, the unpaid Start-Up Work qualified as unpaid straight time.

55.    In weeks in which the Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours, the unpaid Start-Up Work qualified as unpaid overtime.

56.    Defendants required (and continue to require) Plaintiff and the Putative Collectives/Class Members be ready to accept their first call within one minute of clocking in both at their start of shift and after clocking back in at the end of the meal break.

57.    Specifically, Plaintiff Roy's supervisor told him that he needed to be active and taking calls as soon as he clocks in. Plaintiff Roy's supervisor advised him to begin preparing his computer at least thirty (30) minutes prior to his shift start time, so that he would have enough time to prepare the computer, its systems, and deal with any potential technical issues so that he can be ready to take calls right at shift start.

58.    If Plaintiff and the Putative Collective/Class Members did not complete their Start-Up Work before clocking in, they would not be prepared to take phone calls by their shift start time, they can be (and often are) subject to discipline.

59.    Some of the Plaintiff and the Putative Collective/Class Members' Start-Up Work had to be performed before Plaintiff and the Putative Collective/Class Members could even access the clock in program.

60.     Specifically, turning on the computer, logging into the computer, and logging into the Virtual Protected Network had to be performed before the Plaintiff and the Putative Collective/Class Members could log into the clock in program.

61.     Even though Defendants knew the Plaintiff and the Putative Collective/Class Members had to perform this work prior to even being able to access the clock in program, Defendants do not credit them time for this work.

62.     Defendants consider time spent turning on the computer, logging in to the desktop, and logging into the Virtual Protected Network and other similar security programs to be non-compensable work.

63.     After turning on the computer, logging in, and logging into all of the security programs, Plaintiff and the Putative Collective/Class Members could then access their programs and databases.

64.     Plaintiff and the Putative Collective/Class Members were required by Defendants to open and stabilize all of their programs and databases prior to going active on the dialer program.

65.     Should a Plaintiff or Putative Collective/Class Member go active on the dialer program and begin taking calls before the programs were open and stabilized, the Plaintiff or Putative Collective/Class Member would not be able to access information and material critical to help the caller, such as plan information, customer data, provider data, health care records, billing information, or other sensitive information.

66.     Because the programs and databases could take several minutes to open and stabilize, Plaintiff and the Putative Collective/Class Members could not clock in until the programs were open and stabilized, otherwise they could receive discipline for being active on the dialer within a minute of clocking in.

67.    Therefore, the only way to be ready and have completed the Start-Up Work on time, and avoid discipline, is to complete the Start-Up Work off-the-clock and without pay.

68.    Defendants knew the Start-Up Work took a substantial amount of time and encouraged performing the Start-Up Work off-the-clock.

69.    Although this start-up time is necessary and integral to their job duties, Plaintiff and the Putative Collective/Class Members have not been compensated for this time.

70.    As such, Defendants required (and continues to require) that Plaintiff and the Putative Collective/Class Members perform the Start-Up Work "off-the-clock" before they clock in.

### Unpaid Technical Downtime

71.    Further, Plaintiff and the Putative Collective/Class Members regularly encountered technical difficulties such as computer crashes, software crashes, and security access errors multiple times each week that required the Plaintiff and the Putative Collective/Class Members to reboot their computers, reset software systems, reset passwords, and contact Defendants' technical support team.

72.    The Technical Downtime Work could take anywhere from ten (10) minutes to over one (1) hour to complete depending on the severity of the issue.

73.    Notably, Plaintiff and the Putative Collective/Class Members were not compensated for their Technical Downtime Work.

74.    Although Defendants had previously paid Plaintiff and the Putative Collective/Class Members for time spent performing Technical Downtime Work, Defendants altered their policy in May of 2022 to require their Call Center Employees to clock out while performing Technical Downtime Work.

75.    On May 9, 2022, Plaintiff Roy's supervisor, Taylor Carter, relayed the change in policy to Plaintiff Roy and his co-workers in an email, part of which is shown below.

> **We will NO LONGER pay for down time.** This means if you are having a system issue of any kind – including password issues- you will have to be clocked out until it is resolved. One reason is we have MANY people that are

76.     Although they are required to clock out during Technical Downtime, Defendants still require the Plaintiff and Putative Collective/Class Members to actively troubleshoot their computers, trying to fix them, so they may resume their normal work.

77.     Defendants knew the Technical Downtime Work took a substantial amount of time and required Plaintiff and the Putative Collective/Class Members to perform the Technical Downtime Work off-the-clock.

78.     Although this Technical Downtime Work is necessary and integral to their job duties—in that they cannot perform their work unless the computer and its systems are working—Plaintiff and the Putative Collective/Class Members have not been compensated for this time.

79.     As such, Defendants required (and continues to require) that Plaintiff and the Putative Collective/Class Members perform the Technical Downtime Work "off-the-clock".

80.     As a result of Defendants' company-wide policy and practice requiring Plaintiff and the Putative Collective/Class Members to perform their Start-Up Work and Technical Downtime Work off-the-clock, Plaintiff and the Putative Collective/Class Members were not compensated for all hours worked, including all worked in excess of forty (40) in a workweek at the rates required by the FLSA.

81.     Defendants were (and continue to be) aware of their obligation to pay Plaintiff and the Putative Collective/Class Members for all hours worked and pay the proper amount of overtime for all hours worked in excess of forty (40) each week but has failed to do so.

82.     Because Defendants did not pay Plaintiff and the Putative Collective/Class Members for all hours worked and time and a half for all hours worked in excess of forty (40) in a workweek, Defendants' pay policies and practices violate the FLSA and the state laws of Kentucky alleged herein.

83.     Because Defendants did not pay Plaintiff and the Putative Collective Members time and a half for all hours worked in excess of forty (40) in a workweek, Defendants' pay policies and practices willfully violate the FLSA.

84.     Specifically, Plaintiff Roy complained to his manager on numerous occasions, stating that it was illegal for Defendants to refuse to pay for both the Start-Up Work and Technical Downtime Work.

85.     Defendants ignored Plaintiff Roy's warnings.

86.     Because Defendants did not pay Plaintiff and the Putative Class Members for all hours worked within the time frame required by the state laws of Kentucky, Defendants' pay policies and practices also violate the state laws of Kentucky.

## V.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Collective Action Alleging FLSA Violations)

**A.     FLSA COVERAGE**

87.     The preceding paragraphs are incorporated as though fully set forth herein.

88.     The "FLSA Collective" and "FLSA Collective Members" are defined as follows:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY TPUSA, INC. AND/OR SENTURE, LLC, AT ANY TIME FROM DECEMBER 6, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

89.     At all material times, Defendants have been employers within the meaning of the FLSA, 29 U.S.C. § 203(d).

90.     At all material times, Defendants have been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

91.     At all material times, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of insurance and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

92.     Specifically, Defendants employ numerous call-center employees to provide services across the United States, purchase materials through commerce, transport materials through commerce and on the interstate highways, and conduct transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

93.     During the respective periods of Plaintiff and the FLSA Collective Members' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce for purposes of the FLSA.

94.     In performing work for Defendants, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

95.     Specifically, Plaintiff and the FLSA Collective Members are (or were) hourly employees who assisted Defendants' customers and employees throughout the United States. 29 U.S.C. § 203(j).

96.    At all material times, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

97.    The proposed classes of similarly situated employees—that is, the FLSA collectives sought to be certified pursuant to 29 U.S.C. § 216(b), are defined in Paragraph 88.

98.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendants.

**B.    FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

99.    Defendants violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of insurance sales, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

100.    Moreover, Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

101.    Defendants knew or should have known their pay practices were in violation of the FLSA.

102.    Defendants are sophisticated parties and employers, and therefore knew (or should have known) their pay policies were in violation of the FLSA.

103.    Plaintiff and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted Defendants to pay them according to the law.

104.    The decision and practice by Defendants to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

105.    Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.    COLLECTIVE ACTION ALLEGATIONS

106.    All previous paragraphs are incorporated as though fully set forth herein.

107.    Pursuant to 29 U.S.C. § 216(b), Plaintiff bring this action collectively on behalf of Defendants' employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

108.    Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

109.    The FLSA Collective is defined in Paragraph 88.

110.    Defendants' failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Defendants, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

111.    Thus, Plaintiff' experiences are typical of the experiences of the FLSA Collective Members.

112.    The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

113.    All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

114.    Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

115.    Absent a collective action, many members of the proposed FLSA collectives will not likely obtain redress of their injuries and Defendants will retain the proceeds of their violations.

116.    Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

117.    Accordingly, notice of the action should be promptly sent to the FLSA collective of similarly situated Plaintiff as in Paragraph 88.

<u>**SECOND CAUSE OF ACTION**</u>
**(Class Action Alleging Violations of the Kentucky Acts)**

**A.    KENTUCKY ACTS COVERAGE**

118.    All previous paragraphs are incorporated as though fully set forth herein.

119.    The "Kentucky Class" and "Kentucky Class Members" are defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY TPUSA, INC. AND/OR SENTURE, LLC, IN THE STATE OF KENTUCKY, AT ANY TIME FROM DECEMBER 6, 2019, THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

120.    At all material times, Defendants have been an "employer" as defined by the Kentucky Acts. *See* KY. REV. STAT. ANN. § 337.010(d).

121.    At all material times, Plaintiff Roy and the Kentucky Class Members were Defendants' "employees" as defined within the Kentucky Acts. *See* KY. REV. STAT. ANN. § 337.010(e).

122.     Defendants—the "employers"—are not exempt from paying wages and overtime benefits under the Kentucky Acts.

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE KENTUCKY ACTS**

123.     All previous paragraphs are incorporated as though fully set forth herein.

124.     The Kentucky Acts require that "[e]very employer doing business in [Kentucky] shall . . . pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days prior to the date of that payment." KY. REV. STAT. ANN. § 337.020.

125.     Defendants have willfully failed to pay Plaintiff Roy and the Kentucky Class Members for all hours they worked.

126.     Specifically, Defendants failed (and continue to fail) to pay all compensation earned for work performed by Plaintiff Roy and the Kentucky Class.

127.     Plaintiff Roy and the Kentucky Class Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein, and Defendants are in possession and control of necessary documents and information from which Plaintiff Roy would be able to precisely calculate damages.

128.     Plaintiff Roy, on behalf of himself and the Kentucky Class Members, seeks recovery of their unpaid wages and an additional equal amount as liquidated damages, attorneys' fees, costs, and reasonable expenses of this action to be paid by Kroger. *See* KY. REV. STAT. ANN. §337.385.

129.     The proposed class of putative class members sought to be certified pursuant to the Kentucky Acts is defined in Paragraph 119.

130.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

C.    **KENTUCKY CLASS ALLEGATIONS**

131.    Plaintiff Roy and the Kentucky Class Members bring their Kentucky Acts claim as a class action pursuant to FED. R. CIV. P. 23 on behalf of all similarly situated individuals employed by Defendants to work in Kentucky since December 6, 2019.

132.    Class action treatment of Plaintiff Roy and the Kentucky Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

133.    The number of Kentucky Class Members is so numerous that joinder of all class members is impracticable.

134.    Plaintiff Roy's Kentucky state-law claims share common questions of law and fact with the claims of the Kentucky Class Members.

135.    Plaintiff Roy is a member of the Kentucky Class, his claims are typical of the claims of other Kentucky Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other Kentucky Class Members.

136.    Plaintiff Roy and his counsel will fairly and adequately represent the Kentucky Class Members and their interests.

137.    Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the Kentucky Class should be certified as defined in Paragraph 119.

**VI.**
**RELIEF SOUGHT**

138.    Plaintiff respectfully prays for judgment against Defendants as follows:

a.    For an Order certifying the FLSA Collective as defined in ¶ 88;

---

        b.        For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

        c.        For an Order pursuant to § 16(b) of the FLSA finding Defendants liable for unpaid wages, including unpaid overtime wages, due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

        d.        For an Order certifying the Kentucky Class as defined in ¶ 119, and designating Plaintiff Roy as Representative of the Kentucky Class;

        e.        For an Order pursuant to the Kentucky state law awarding Plaintiff Roy and the Kentucky Class Members damages for unpaid wages and all other damages allowed by law;

        f.        For an Order awarding the costs of this action;

        g.        For an Order awarding attorneys' fees;

        h.        For an Order awarding pre-judgment and post-judgment interest at the maximum legal rate;

        i.        For an Order awarding Plaintiff Roy a service award as permitted by law;

        j.        For an Order compelling the accounting of the books and records of Defendants, at Defendants' expense (should discovery prove inadequate); and

        k.        For an Order granting such other and further relief as may be necessary and appropriate.

Date:   December 6, 2024                     Respectfully submitted,

                              By:    /s/ *Andrew W. Stavros*
                                     Andrew W. Stavros
                                     **STAVROS LAW** P.C.
                                     *Attorney for Plaintiff*

                              By:    /s/ *Lauren Braddy*
                                     Lauren Braddy
                                     Carter Hastings
                                     **ANDERSON ALEXANDER, PLLC**
                                     *Attorneys for Plaintiff*
                                     (*Pro Hac Vice Admissions Anticipated*)

# Exhibit A

## <u>CONSENT TO JOIN WAGE CLAIM</u>

Print Name: _____Benjamin Roy_____

1. I hereby consent to participate in a collective action lawsuit against **TELEPERFORMANCE, AND ANY SUBSIDIARIES AND/OR AFFILIATES** to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at ANDERSON ALEXANDER, PLLC as my attorneys to prosecute my wage claims.

4. I intend to pursue my claim individually, unless and until the Court certifies this case as a collective action. I agree to serve as the Class Representative if the Court so approves. If someone else serves as the Class Representative, then I designate the Class Representative(s) as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at ANDERSON ALEXANDER, PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.


Signature: *Benjamin L Roy*_____    Date:_____9/5/24 14:18 CDT_____