IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LEE PAYNE,<br>Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TPUSA, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00908-JNP-JCB<br><br>District Judge Jill N. Parrish |

Plaintiff Lee Payne, individually and on behalf of all others similarly situated, sued defendant TPUSA, Inc. for unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the Fair Labor Standards Act of 1938 and for unpaid compensation, liquidated damages, and attorneys' fees and costs pursuant to the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §§ 105/1–105/15, and the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. §§ 115/1–115/15 ("IWPCA"). TPUSA moves to dismiss the IWPCA claim. ECF 37. The court DENIES the motion in part and GRANTS the motion in part.

## BACKGROUND[1]

TPUSA provides its clients with inbound and outbound call center support. To support its services, TPUSA employs call center employees who are paid by the hour. Plaintiff Payne was employed by TPUSA in Illinois from approximately December 2020 until January 2024.

---

[1] The court recites the facts as alleged in Payne's complaint.

Payne and the putative class members worked scheduled "on-the-clock" hours, which in some weeks totaled approximately forty hours and in some weeks totaled fewer than forty hours. In addition to this on-the-clock work, Payne and the putative class members performed and continue to perform between ten to thirty minutes of uncompensated "off-the-clock" work per day. Payne alleges it was TPUSA's "regular practice" to require employees to perform necessary and indispensable work off-the-clock. ECF 32 ¶ 6.

This off-the-clock work can be disaggregated into what Payne describes as Start-Up Work and Technical Downtime Work. The Start-Up Work originated from TPUSA's policy of requiring employees to be ready to take their first phone call within minutes of clocking in. As a result, employees performed various tasks, including booting up their computers and logging into programs and databases, before clocking in, and, in fact, much of this work had to be completed before employees were able to reach the clock in program. This work took anywhere from ten to thirty minutes. As Payne alleges, TPUSA considers these actions to be non-compensable work.

In addition to the Start-Up Work, employees regularly encountered technical difficulties that required them to reboot their computers and work with TPUSA's technical support team, actions that Payne and the putative class members describe as Technical Downtime Work. The Technical Downtime Work could take anywhere from ten minutes to over one hour. TPUSA previously paid employees for this work, but TPUSA altered its policy in May 2022 to require that hourly call-center employees clock out while performing this work.

Payne alleges that TPUSA agreed to pay Payne and each putative class member an hourly rate for all hours worked up to 40 hours in a workweek—an offer that Payne and the putative class members accepted. Payne also alleges that TPUSA was and is aware of its obligation to pay Payne and the putative class members for all hours worked.

Payne sued TPUSA to recover overtime wages, unpaid wages, liquidated damages, attorneys' fees, and costs, individually and on behalf of those similarly situated persons who worked for TPUSA in call centers or remotely, pursuant to the Fair Labor Standards Act of 1938, the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act. TPUSA moves to dismiss the IWPCA claim for two principal reasons. First, it argues that Payne fails to allege an employment contract or agreement that is more than an allegation that TPUSA is bound by existing laws. Second, TPUSA argues that Payne has not nor cannot allege there was any employment contract or agreement that she be paid specifically for the Start-Up Work or Technical Downtime Work. Payne opposes the motion and additionally requests leave to amend the complaint if the court finds the complaint's factual allegations insufficient.

## LEGAL STANDARD

TPUSA argues that the IWPCA claim against it should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

## ANALYSIS

I.  **PLAINTIFF'S IWPCA CLAIM**

The IWPCA does not provide a substantive right to payment of overtime pay or any other wage. *Dominguez v. Micro Center Sales Corp.*, No. 11 C 8202, 2012 U.S. Dist. LEXIS 67312, at

*2 (N.D. Ill. May 15, 2012). Instead, the IWPCA "mandates payment of wages only to the extent the parties' contract or employment agreement requires such payment." *Hoffman v. Roadlink Workforce Solutions, LLC*, No. 12 C 7323, 2014 U.S. Dist. LEXIS 105081, at *13 (N.D. Ill. Aug. 1, 2014). In other words, the IWPCA "merely requires 'that the employer honor his contract.'" *Lopez v. Smurfit-Stone Container Corp.*, No. 02 C 737, 2003 U.S. Dist. LEXIS 2180, at *8–9 (N.D. Ill. Feb. 10, 2003) (quoting *Nat'l Metalcrafters, Div. of Keystone Consol. Indus. v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986)); *see Brand v. Comcast Corp.*, No. 12 CV 1122, 2012 U.S. Dist. LEXIS 164661, at *4 (N.D. Ill. Nov. 19, 2012) ("The IWPCA does not provide an independent right or cause of action, but simply enforces the terms of an existing contract or agreement.").

The employment contract or agreement under the IWPCA does not need to be formally negotiated. *Chagoya v. City of Chicago*, 992 F.3d 607, 624 (7th Cir. 2021). Nor do plaintiffs need to plead all elements of a contract as long as they plead facts showing mutual assent to an agreement. *Id.* The agreement can even be entirely implicit, with an employer's acquiescence, custom, or practice potentially constituting an agreement. *Id.* at 625. Nevertheless, an IWPCA claim must allege more than "the existence of *any* employment contract or agreement, or . . . a *statutory* right to certain wages"; the claim must allege "the existence of a contract or agreement that specifically gives [Plaintiff] a right to the wages she seeks." *Dominguez*, 2012 U.S. Dist. LEXIS 67312, at *4. Accordingly, to avoid dismissal, a plaintiff must allege an agreement that is more than the employer being bound by existing employment laws. *See Brand v. Comcast Corp.*, No. 12 CV 1122, 2013 U.S. Dist. LEXIS 52098, at *17 (N.D. Ill. Apr. 11, 2013); *Brand v. Comcast Corp.*, 2012 U.S. Dist. LEXIS 164661, at *8 (holding handbook language that referenced statutory obligations did not create new contractual rights under the IWPCA); *House v. Ill. Bell Tel. Co.*, 148 F. Supp. 3d 701, 708 (N.D. Ill. 2015) (ruling that a company's time reporting policy did "no

more than memorialize [the company's] commitment to abide by state and federal laws and applicable collective bargaining agreements").

Here, Payne alleges "TPUSA agreed to pay Plaintiff Payne and each IWPCA Class Member an hourly rate for all hours they worked up to 40 hours in a workweek." ECF 32 ¶ 134. TPUSA argues that such an allegation is insufficient because it is nothing more than an acknowledgment of an already-existing legal obligation. But the agreement alleged is not an agreement to abide by a legal obligation; rather, it is a specific agreement that TPUSA will pay its employees for up to forty hours a week. The court is satisfied that Payne has sufficiently alleged an employment agreement that is more than an acknowledgment of an existing legal obligation.

TPUSA also argues that the plaintiff has not and cannot allege any agreement with TPUSA that she be paid specifically for the Start-Up Work and Technical Downtime Work. As TPUSA has correctly argued, an IWPCA claim must allege that the plaintiff was entitled to wages for the *specific* work she performed. Indeed, "numerous district courts have concluded that conclusory allegations that an employer agreed to pay an employee an agreed upon hourly rate for all hours of work performed, are insufficient to support a claim that an employer failed to pay an employee for off-the-clock work before or after work and/or during unpaid meal breaks." *Loonsfoot v. Stake Ctr. Locating, LLC*, No. 3:23-cv-03171, 2024 U.S. Dist. LEXIS 133779, *15–18 (S.D. Ill. July 29, 2024) (listing cases). Rather, "it is well established that an employee can have no claim under the IWPCA unless the employer and employee agreed that the former would compensate the latter for the particular work allegedly performed." *Brown v. Lululemon Athletica, Inc.*, No. 10 C 05672, 2011 U.S. Dist. LEXIS 18217, at *8 (N.D. Ill. Feb. 24, 2011).

Here, Payne's claim with respect to the Start-Up Work is deficient for two reasons. First, to support the alleged agreement to be paid for the Start-Up Work, Payne has essentially alleged

5

only what other courts have described as conclusory allegations—an agreement to be paid an hourly rate for all hours of work to be performed. The court cannot infer an agreement to pay Payne specifically for the Start-Up Work from that alleged agreement. *See Hoffman*, 2014 U.S. Dist. LEXIS 105081, at *14, 16–17 (holding that an allegation of an agreement to pay "for all hours worked at the rates agreed to by the parties" did not demonstrate defendants agreed to pay for off-the-clock work); *Brown*, 2011 U.S. Dist. LEXIS 18217, at *7–8 ("The inference of an employment agreement between the parties is distinct, however, from an inference that Lululemon agreed to compensate Brown for the time she spent . . . for such ancillary activities."). Second, while Payne has not alleged an agreement that specifically evidences a right to payment for this work, Payne *has* alleged that TPUSA considers the Start-Up Work to be non-compensable. Consequently, there can be no mutual assent to an alleged agreement to pay Payne for the Start-Up Work if TPUSA did not in the first place consider the work to be compensable. *See also, e.g.*, *Reed v. Positive Connections, Inc.*, No. 16 C 3377, 2016 U.S. Dist. LEXIS 108529, *8 (N.D. Ill. Aug. 16, 2016) ("To the contrary, as defendant points out, plaintiffs actually allege the opposite; that defendant's practice was not to pay for any time they worked beyond the estimated time."). For these reasons, the court GRANTS TPUSA's motion to dismiss the IWPCA claim with respect to the Start-Up Work.

      The above reasoning does not, however, apply to Payne's IWPCA claim for the Technical Downtime Work. While Payne failed to allege that TPUSA agreed to pay for the Start-Up Work, she has alleged that TPUSA previously paid employees for Technical Downtime Work, only changing its policy in May 2022.

      TPUSA argues that even if this prior policy could constitute mutual assent for an agreement, the fact that Payne continued to work for TPUSA from May 2022 to January 2024

without protest signifies Payne's tacit acknowledgement to the amended policy. *See also Landers-Scelfo v. Corp. Office Sys.*, 827 N.E.2d 1051, 1068 (Ill. App. Ct. 2005) (noting "an employer and an employee, by acting in a manner consistent with an employment agreement, can set the material terms of the agreement").

Other courts analyzing IWPCA claims have considered similar arguments, namely that a lack of protest to a policy signified assent. *See, e.g.*, *Loonsfoot*, 2024 U.S. Dist. LEXIS 133779, at *17–18 (noting a lack of protest could suggest that the plaintiff and the putative class members "assented to SCL's practice of not paying them for off-the-clock work"); *Brashear v. SSM Health Care Corp.*, No. 4:22-cv-00569-SRC, 2022 U.S. Dist. LEXIS 233092, at *12 (E.D. Mo. Dec. 29, 2022) (noting the court could "reasonably infer" the plaintiff and the putative class members assented to a practice, which would be part of an employment agreement, because there was no allegation the plaintiff "protested, challenged, or disagreed with [the practice] in any way during her employment").

But these cases in which a lack of protest evidenced sufficient assent are distinguishable because there was no claim that the employers' practices *had changed* during the timespan of the employee's tenure. And in those cases where an alleged agreement was modified during the employee's tenure, courts have noted that whether an employee's decision to continue working was sufficient to signify assent was a fact-intensive inquiry. *See, e.g.*, *Gallardo v. Scott Byron & Co.*, No. 12-CV-7202, 201 U.S. Dist. LEXIS 4634, at *55 (N.D. Ill. Jan. 14, 2014) (holding that an employee continuing to work for over a year did not sufficiently demonstrate acceptance of an alleged modification to his employment agreement for a summary judgment motion). Here, Payne specifically alleges that TPUSA previously paid for Technical Downtime Work, both lending credence to Payne's allegations of an agreement and necessitating a higher showing for any finding

7

of Payne assenting to the amended policy. Thus, the determination of whether Payne assented to the modified agreement is more appropriately made with the benefit of discovery. At the pleading stage, Payne has sufficiently alleged a potential agreement to be paid for Technical Downtime Work. Accordingly, the court DENIES the motion to dismiss the IWPCA claim with respect to the Technical Downtime Work.

## II.  PLAINTIFF'S REQUESTS FOR LEAVE TO AMEND THE COMPLAINT

The court DENIES Payne's request for leave to amend the complaint included in her response brief. Pursuant to DUCivR 7-1(a)(3), such relief should be sought by separate motion. While the court should freely give leave when justice so requires, Fed. R. Civ. P. 15(a)(2), the court is unable to determine if justice so requires without the required proposed amended pleading that plaintiff failed to include. *See Tracy v. Stephens*, No. 1:21-cv-00152-TC-CMR, 2022 U.S. Dist. LEXIS 200114, *33–34 (D. Utah Nov. 1, 2022). This is especially true as the pleaded facts suggest that an amended complaint would need to contradict the current complaint in order to overcome the partial grant of the motion to dismiss (by alleging that TPUSA did consider Start-Up Work to be compensable).

## CONCLUSION

For the above-stated reasons, the court denies in part and grants in part TPUSA's motion to dismiss.

DATED September 22, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge